FORET, Judge.
Clayton J. Fontenot (plaintiff), after being involved in an automobile accident, brought this action to recover damages under the terms of an automobile insurance policy issued him by defendant, State Farm Mutual Automobile Insurance Company. In addition, plaintiff sought to recover the statutory penalties and attorney’s fees. Defendant denied coverage, asserting that the policy had been cancelled for non-payment of the premium prior to the date of plaintiff’s accident.
The trial court, after trial on the merits, rendered judgment in favor of plaintiff, ordering defendant to pay him the sum of $8,907.85, together with legal interest thereon from date of judicial demand until paid[1].
Defendant appeals and raises the following issues:
(1) Whether the trial court committed manifest error in finding that plain *748 tiff had paid the full premium due on the policy; and, if so,
(2) Whether the trial court committed manifest error in finding that the policy afforded plaintiff coverage on the date of the accident.
FACTS
Plaintiff was the owner of a 1980 Ford Mustang that had been insured by defendant under the policy. On June 18, 1981, plaintiff was involved in an automobile accident in which he suffered personal injury, and which resulted in the total destruction of his vehicle. In his petition, plaintiff alleged that he incurred medical expenses totaling $1,407.85 for treatment of his injuries, and that his vehicle was worth $7,500.00. He further alleged that defendant had issued him the policy, which was in full force and effect on the date of the accident. Among other things, the policy provided for comprehensive, collision, and medical payments coverages. However, defendant refused to pay plaintiff any sums whatsoever (for the reason noted above), although he made demand and filed proof of loss with it. Because of defendant’s refusal to pay, plaintiff instituted the present action.
ALLEGED NON-PAYMENT OF PREMIUM
Defendant contends that the trial court erred in finding that plaintiff had paid the full premium due on the policy. It argues that plaintiff failed to prove that he had made full payment, and further, that the evidence shows that he did not do so.
Plaintiff testified that he initially purchased the policy from defendant in August of 1979, when he bought the vehicle destroyed in the accident[2]. Because he failed to pay the entire premium, that policy was cancelled in January of 1981. Plaintiff stated that he then “renewed” the policy on February 26, 1981, with Randall LaFleur (one of defendant’s agents). According to plaintiff, on that date, he paid LaFleur the entire premium in cash and obtained a receipt from him. However, the receipt was in his vehicle at the time of the accident and was never recovered.
Randall LaFleur testified that plaintiff initially purchased the policy on July 21, 1980, and that it was up for renewal on January 21, 1981. However, plaintiff took no action and the policy lapsed. On February 26, 1981, plaintiff came to his office to make an application for reinstatement of the lapsed policy. LaFleur stated that plaintiff financed the policy premium under a plan offered by defendant that is known as “fifty-fifty”.
Under that plan, LaFleur explained that an insured pays fifty percent of the premium, when he initially purchases a policy or makes an application for reinstatement of a policy (in either case, the policy will be written for a minimum of six months), and the balance is due within sixty days thereof. If no payment is made within sixty days, the insured is sent a cancellation notice. However, the policy coverage is extended for another thirty days because the insured has, in effect, paid for ninety days of coverage.
LaFleur testified that on February 26, 1981, he received $269.83 in cash from plaintiff which represented a payment of fifty percent of the policy premium. Defendant then introduced in evidence a document sent in by LaFleur. This document indicates that LaFleur received $269.83 from plaintiff on February 26, 1981, in payment of the policy premium under the “50/50” plan, and that the payment was being transmitted to defendant. LaFleur testified that he received no other payments from plaintiff on the premium.
*749 LaFleur then identified a cancellation notice, received by his office, which states that plaintiff’s policy, “... IS HEREBY CANCELLED EFFECTIVE 12:01 A.M. STANDARD TIME May-14-81 DUE TO NONPAYMENT OF THE PREMIUM”. His office usually receives such notices about a week before the cancellation date. His next action, taken with respect to the policy, occurred on June 19, 1981, when someone came to his office and made a reinstatement application for the policy. This was one day after the date on which the accident occurred. Plaintiff’s loss was reported to him three days later. LaFleur was unable to obtain a copy of the receipt he had given plaintiff because his office destroyed all receipt books after keeping them for one year.
The trial court, in its written opinion, stated:
“The court is of the opinion that Mr. Fontenot should be afforded coverage under the policy due to the fact that the policy was issued for a six-month period and Mr. Fontenot testified that he did in fact pay the premium in full. In support of his contention is the fact that the loss payee, Ford Motor Credit Co., did not receive notice of cancellation of the policy. The policy on its face shows six months coverage through August 1981, and does not provide for installment payments of the premium.”
We conclude that the trial court overlooked a crucial portion of the evidence.
Sandra Otman, an employee of Ford Motor Credit Company (FMCC), was called as a witness by plaintiff. FMCC had a chattel mortgage on plaintiff’s vehicle at the time of the accident. As noted by the trial court, Mrs. Otman testified that FMCC had received no cancellation notice from defendant regarding plaintiff’s policy. However, under cross-examination, she was asked if she knew the reason why the Standard Guaranty Insurance Company (Standard) had paid FMCC the sums of $5,147.34 and $387.03 for plaintiff’s account. She replied:
“Yes, sir, we added the insurance when we were advised that Mr. Fontenot did not have coverage by Mr. Fontenot.”
Mrs. Otman went on to explain that, under its master policy with Standard, FMCC could place insurance on an account when, “... we don’t receive a cancellation notice and the unit is totaled out, ... ”. FMCC placed this insurance with Standard on August 20, 1981. An examination of the declarations section of plaintiff’s policy states that the policy period is from February 26, 1981, to August 26,1981. Thus, prior to the expiration date stated in his policy, plaintiff went to FMCC and admitted that he had no insurance coverage on his vehicle. This admission by plaintiff is completely contradictory to his testimony that he paid the policy premium in full on February 26, 1981, and that he never received a cancellation notice from defendant.
It is our opinion that the trial court’s finding, that plaintiff paid the policy premium in full, is clearly wrong.
NOTICE OF CANCELLATION
Defendant contends that the trial court erred in allowing plaintiff to recover damages, under the policy, when the policy had been effectively cancelled for non-payment of the premium prior to the date of the accident. Having found that plaintiff failed to pay the premium in full, we must now determine whether plaintiff was given proper notice that his policy was being can-celled.
LSA-R.S. 22:636.1 makes its provisions applicable to, “... an automobile liability, automobile physical damage or automobile collision policy, or any combination thereof, ... ”. Thus, its provisions are applicable to the policy in question.
LSA-R.S. 22:636.1(B)(1) provides:[3]
*750 “B. A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(1) Nonpayment of premium; or
LSA-R.S. 22:636.1(D) provides, in pertinent part, that:
“D. No notice of cancellation of a policy to which Subsections B or C applies shall be effective unless mailed or delivered by the insurer to the named insured at least twenty days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given.
Finally, LSA-R.S. 22:636.1(F) provides:
“F. Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice.”
A review of the copy of the cancellation notice, allegedly mailed to plaintiff by defendant, shows that it meets all of the requirements of LSA-R.S. 22:636.1(D). The notice states that it was sent May 1, 1981, and the effective date of cancellation is May 14, 1981. Further, the notice states the reason for cancellation is non-payment of the premium.
Carlos Brown, an insurance supervisor for defendant, testified that cancellation notices are computer printed forms that are released to his department each morning. It’s his job to check the processing of these forms. After his office inspects them, they are placed in envelopes and taken to the mail room.
Steve Nolan[4] testified that he is a postal clerk employed by defendant. His duties include the mailing of cancellation notices by certified mail to policyholders whose policies are about to be cancelled. He also keeps records concerning the mailing of these notices. He stated that, after receiving these notices (and other items to be sent by certified mail), he assigns a certain number (given by the postal services to defendant’s regional office for use in mailing certified letters) to the first item to be mailed that day. He then records this number and the number assigned to the last item sent by certified mail that day. He also stamps the cancellation notice with the number assigned to it. The copy of the cancellation notice allegedly sent to plaintiff is stamped with the number 00-143-426.
Nolan was requested to check his records for May 1, 1981. After doing so, he testified that the number stated above was included in the numbers assigned to certified letters mailed by defendant on that date. Nolan went on to testify that he personally brings defendant’s certified letters to the post office each day for mailing. There, a postal supervisor counts each one of the items to make sure that all have been delivered to the post office. The Postmaster then signs a document for defendant showing that he received the certified letters for mailing. Nolan stated that his records show that the certified letter sent to plaintiff had never been returned. The copy of the cancellation notice shows that it was sent to plaintiff at the address shown in his policy.
Defendant introduced in evidence the deposition of William H. Monk, the Postmaster at Kinder. He explained how the post office handles certified letters. Upon receiving a certified letter, a certain form is filled out by the post office and placed in the recipient’s post office box. The article is then kept for fifteen days, and is returned to the sender if it is not picked up by the recipient. If the article is picked up by the recipient within fifteen days, he is required to sign the form filled out by the post office. The form is then kept on file for two years. Monk stated that virtually all pieces of certified mail have a number assigned to them when they reach the receiving post office.
*751 Monk was Postmaster at Kinder during May, 1981. He stated that he received a certified letter bearing the number 00-143-426. Monk then testified that plaintiff came to the post office, signed the form concerning certified mail, and picked up this letter. Monk remembered plaintiff picking up this piece of mail because plaintiff did not have the form with him at the time. Monk had to fill out another form for plaintiff to sign before he could release the certified letter to him. Plaintiff admitted that the signature on the form was similar to his, but denied that he had signed it.
Plaintiff testified that he never received the cancellation notice because he was working in Texas during May, 1981. However, as noted above, plaintiff admitted to PMCC that he had no insurance coverage before the expiration date of the policy.
It is our opinion that defendant has proven that it mailed the cancellation notice to plaintiff. Under the provisions of LSA-R.S. 22:636.1(F), this is sufficient proof that notice of cancellation was given plaintiff.[5]
DECREE
For the above and foregoing reasons, the judgment of the trial court is reversed. Judgment is hereby rendered in favor of defendant, dismissing plaintiff’s action against it.
All costs of this appeal, and in the trial court, are assessed against plaintiff-appel-lee.
REVERSED AND RENDERED.

. The trial court’s judgment makes no mention of plaintiffs claim for the statutory penalties and attorney’s fees. However, in its written opinion the trial court stated: “This court cannot find that the defendant acted arbitrarily in denying the claim as there was some basis on the face of their personal business record indicating that payment was not due”.

. Plaintiff appears to have been confused about the dates he testified to. Under direct examination, he testified that he purchased the 1980 Ford Mustang on August 17, 1979, and that he purchased an automobile insurance policy from defendant that same month. However, under cross-examination, he indicated that he had purchased the automobile and the insurance policy in either July or August of 1980. In any event, this date is insignificant for our purposes.

. LSA-R.S. 22:636.1(A)(6) provides:
“(6) ‘Nonpayment of premium’ means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit.”

. Both Nolan and Brown work at defendant’s regional office in Monroe, where the cancelltion notices are prepared and mailed.

. See also our recent decision in Ardoin v. Audubon Ins. Co., 434 So.2d 627 (La.App. 3 Cir. 1983).